Millard F. Machen and Peggy A. Machen v. Commissioner.
Machen v. Commissioner
Docket No. 1885-64.
United States Tax Court
T.C. Memo 1966-193; 1966 Tax Ct. Memo LEXIS 89; 25 T.C.M. (CCH) 990; T.C.M. (RIA) 66193; August 31, 1966
*89 With the proceeds of a bank loan on which he was personally liable, petitioner, Millard F. Machen, purchased a set of power tongs to be used in his oil field service business. Thereafter, he made regular payments into a bank account, which he opened and against which he had sole authority to draw, in the name of "Danco", an assumed name. The bank, on petitioner's authorization, made regular monthly charges against this account for the monthly payments due on petitioner's loan. Petitioners deducted the amounts paid into the Danco account in 1961 on the theory that the power tongs were owned by their daughter and the payments were rent for use in Machen's business. Held: Petitioner, Millard F. Machen, and not his daughter, was the owner of the power tongs. Petitioners, therefore, are not entitled to any rent expense deduction. Petitioners are chargeable with income from the rental of the tongs to a third party and they are entitled to unclaimed deductions for depreciation and interest in connection with Machen's ownership of the tongs. Victor C. McCrea, P.O. Box 1367, Midland, Tex., for the petitioners. D. Ronald Morello, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined a deficiency in petitioners' 1961 joint Federal income tax in the amount of $2,861.51. Petitioners' having abandoned at trial their challenge of respondent's adjustments to their claimed depreciation deduction, the only issue remaining for our decision is whether petitioners' daughter was the owner during 1961 of certain equipment known as "power tongs," or whether petitioner, Millard F. Machen, was the true owner. The resolution of this question will determine whether petitioners are entitled to a rental expense deduction for use of the power tongs, or whether they are chargeable with rental income and entitled to depreciation and interest expense deductions in connection with ownership of the tongs. Findings of Fact The stipulated facts and exhibits are incorporated *91 herein by this reference. Petitioners are husband and wife residing in Midland, Texas. For the year 1961 they filed a joint Federal income tax return with the district director of internal revenue at Dallas, Texas. Petitioners have one daughter, Stephanie Diane Machen, who was 14 years old in 1961, the tax year here involved. References hereinafter to petitioner in the singular shall be to petitioner, Millard F. Machen. Petitioner is engaged in the oil field service and construction business, in which he does remedial work to oil wells and also location work. In the performance of this work he employs certain equipment known as power tongs. [1] It is a common practice in petitioner's business to rent power tongs and other equipment from a rental service. Petitioner rented some tongs from rental services during 1961 and has continued to do so up until the present time. On April 19, 1961, the First National Bank, Midland, *92 Texas (hereinafter referred to as the bank), extended a loan to the petitioner for $9,000, plus interest, payable in 12 monthly installments of $788 each. The purpose of this loan was to finance the purchase of a set of power tongs for use in petitioner's business, and the loan was to be secured by the tongs and other equipment. At the time the loan was applied for, petitioner told the vice president of the bank that he was buying the equipment for his daughter to help defray her college expenses. At no time did this bank officer have any conversation with petitioner's daughter in this regard. The note and chattel mortgage on the power tongs were in the name of petitioner alone and the bank looked to petitioner for ultimate payment of the note and obligation. Petitioner ordered the tongs, received the invoice and paid for them with the money he had borrowed from the bank. On May 25, 1961, a checking account under the name of "Danco" was opened by petitioner at the bank, with the signature of petitioner being authorized for withdrawals. The first and only check written on this account during 1961 was drawn on May 26, 1961. This check was signed by petitioner and was for the first *93 payment on his loan for the purchase of the power tongs. Upon petitioner's authorization, by automatic monthly deductions, the bank thereafter charged the Danco account for each of the months, June through December, 1961, with the $788 payment due on the loan to petitioner. The name "Danco" was selected by petitioners as a derivation from and contraction of the middle name of their daughter. "Diane," combined with the word company. There is no evidence in the record that petitioners' daughter was authorized to make withdrawals during 1961. At the time of trial of this case petitioners' daughter was in college and her college expenses were being paid for out of the Danco account; petitioner was no longer authorized to sign checks on the Danco account. Petitioner deposited a total of $6,305.67 in the account entitled "Danco" during the year 1961, which amount was claimed on petitioners' 1961 joint return as rental expense. The only other amount deposited in the Danco account during 1961 was $31.50, an amount paid to petitioner by a third party for rental of the power tongs. Petitioner had complete control over the use of the power tongs in 1961, and he did not consult with his *94 daughter regarding their use. Petitioners' daughter did not file a timely Federal income tax return for the year 1961. On or about April 5, 1963, subsequent to the start of respondent's audit of petitioners' 1961 return, a return was filed in the name of Stephanie Machen, petitioners' daughter, for the year 1961 with the district director at Dallas. The only gross income shown on this return was $6,337.17 [2] set forth in Schedule C thereof (Profit (or Loss) from Business or Profession). This schedule described Stephanie Machen's principal business activity as "Tong rental" and described the name of the business as "DANCO." Respondent disallowed the rental expense deduction claimed by petitioners on their 1961 return for the $6,305.67 they deposited in the Danco account that year. Respondent determined that petitioner, and not his daughter, was the true owner of the power tongs, and, accordingly, made the following adjustments: a. Disallowance of $6,305.67 claimed as a rental expense *95 deduction by petitioners. b. The inclusion of $31.50 rent income received on the power tongs in the gross income of petitioners. c. Allowance to petitioners of unclaimed depreciation and interest expense deductions related to petitioner's ownership of the power tongs. Ultimate Finding of Fact Petitioner, and not his daughter, owned the power tongs in 1961. Opinion The outcome of this controversy turns upon the question: Who owned the power tongs during 1961? If petitioner owned them, then, of course, he is entitled to no rent expense deduction for their use and he is chargeable with the $31.50 paid by a third party for their use. Both petitioners testified that they had decided to purchase the power tongs for their daughter for her to hold for rent to earn money for college education expenses. Whatever may have been their intentions, however, the petitioners have failed to prove that their daughter ever actually acquired title to the tongs in 1961. It was petitioner who initiated the acquisition of the new power tongs by arranging to borrow $9,000 from the bank to use for the purchase price. It was petitioner who ordered the tongs from the supplier, petitioner who received *96 delivery of the tongs, and petitioner who received the invoice and paid the supplier with the money borrowed from the bank. Petitioner alone executed and was liable on the note and chattel mortgage to the bank. The bank had no dealings with petitioner's daughter with respect to the arranging of the $9,000 loan here involved. Petitioner exercised complete dominion and control over the tongs during 1961, and did not confer with his daughter regarding their use. We can only conclude that petitioner owned the tongs in 1961. Adolph Weil, 31 B.T.A. 899 (1934), affd. 82 F. 2d 561 (C.A. 5, 1936), certiorari denied 299 U.S. 552 (1936). There is no documentary evidence whatever showing acquisition of ownership of the tongs by the daughter, either directly from the supplier or by gift from the petitioner, nor is there any evidence that a lease or rental agreement, either written or oral, was consummated between petitioner and his daughter. The only evidence which lends any support at all to the petitioners' testimony that their daughter owned the tongs - and it is meager support indeed - is the fact that the bank account to which petitioner made payments *97 and from which the bank deducted the monthly payments on petitioner's loan was not in petitioner's name but in the name of "Danco," an assumed name selected by petitioners and which was derived from the words Diane Company. The further fact that an untimely return was filed for 1961 in the daughter's name (d/b/a "Danco"), reporting income from rental of the tongs, is also relied on by petitioner. This evidence is not persuasive. Even though the bank account was not in petitioner's name, it was clearly under his control during 1961, and the monies deposited therein were applied at petitioner's direction upon his note payable to the bank. As far as the evidence before us discloses, petitioner was the only person authorized to make withdrawals from this account in 1961. Hence, petitioner's daughter cannot be regarded as the owner of the Danco account in 1961, and petitioner's payments into this account during 1961 cannot be deemed payments made to his daughter for rent of the power tongs. In connection with the daughter's 1961 tax return, the fact that it was not filed until 1963, after the audit of petitioners' 1961 return had begun, tends to indicate that it was filed in a belated *98 effort to "dress up" a situation virtually naked of evidence which would support petitioners' rent expense deduction on the theory that the daughter owned the tongs. We are mindful that petitioner's accountant testified that he was instructed by petitioner to prepare this return and that he had been told about the Danco account early in 1961, but filing the return had slipped his mind. However, the fact remains that the return was not prepared or executed and filed until April of 1963, more than a year after it was due and after the rental expense deduction was in question in the audit of petitioners' 1961 return then underway. Even if we were to find that petitioners' daughter did in fact acquire ownership of the tongs, we could not sustain petitioners' deduction, as rent, of the amount paid to the Danco account. There is a complete absence of evidence that a rental agreement of any sort existed between petitioner and his daughter. We cannot infer that the payments were made as rent pursuant to a lease or other agreement for payment of rent - especially since the money which petitioner paid into the account was used for his benefit by its being applied in satisfaction of his loan *99 from the bank. If we are to assume as fact the mere allegation that petitioner had made a gift of the tongs to his daughter, we might also as easily assume that she, with similar intra-family generosity, would thereafter have permitted him to use them rent free. In the absence of any proof of a rental agreement, petitioner has failed to establish that the payments in question were ordinary and necessary business expenses deductible under section 162 of the 1954 Code. Since we have found as an ultimate fact that petitioner owned the power tongs in 1961, we hold that petitioners are entitled to no rent deduction for the use of these tongs, that they must include in their gross income the $31.50 received from a third party for rental of the tongs, and that they are entitled to the additional deductions allowed by respondent for depreciation and interest expense related to ownership of the tongs. Decision will be entered for the respondent. Footnotes
1. The exact nature and function of power tongs are not made clear in the record in this case. The most that we can gather from the record, as laymen, is that power tongs are used for removing tubing and rods and are a laborsaving device as opposed to hand tongs.↩
2. This amount coincides with the total of the deposits to the Danco bank account during 1961: $6,305.67 deposited by petitioner, plus $31.50 received for rental of the tongs to a third party.↩